IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| BILLY DALTON | ) |
| | ) |
| v. | ) No. 3:11-0909 |
| | ) Judge Wiseman/Bryant |
| SOCIAL SECURITY ADMINISTRATION | ) |

To: The Honorable Thomas A. Wiseman, Jr., Senior Judge

### REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c), to obtain judicial review of the final decision of the Social Security Administration ("SSA" or "the Administration"), through its Commissioner, denying plaintiff's application for supplemental security income, as provided under the Social Security Act. The case is currently pending on plaintiff's motion for judgment on the administrative record (Docket Entry No. 12), to which defendant has responded (Docket Entry No. 16). Plaintiff has further filed a reply to defendant's response. (Docket Entry No. 17) Upon consideration of these papers and the transcript of the administrative record (Docket Entry No. 10),[1] and for the reasons given below, the undersigned recommends that plaintiff's motion for judgment be DENIED and that the decision of the SSA be AFFIRMED.

### I. Introduction

Plaintiff filed his application for supplemental security income November 8,

---

[1] Referenced hereinafter by page number(s) following the abbreviation "Tr."

2007, alleging that his disability began on October 18, 2007 and was the result of "Stroke ... on left side, I am also blind in my one eye, can't walk without falling, alcoholic ataxia[.]" (Tr. 118) His application was denied at the initial and reconsideration stages of agency review, and he thereafter filed a request for de novo hearing before an Administrative Law Judge ("ALJ"). On April 20, 2010, an ALJ convened the hearing on plaintiff's application, and testimony was received from plaintiff (who was represented by counsel at the hearing), as well as from an impartial vocational expert. (Tr. 28-57) At the conclusion of the hearing, the ALJ took the matter under advisement, until May 21, 2010, when he issued a written decision in which he denied plaintiff's application for benefits. (Tr. 14-24) That decision contains the following enumerated findings:

1. The claimant has not engaged in substantial gainful activity since November 8, 2007, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: alcoholic ataxia; alcoholism; left eye blindness; and depressive disorder (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for at least 2 hours in an 8 hour workday with normal breaks, but may require a cane for prolonged ambulation or ambulation on uneven surfaces; sit up to 6 hours out of an 8 hour workday with normal breaks; occasionally climb ramps/stairs, stoop, kneel, crouch, and crawl; never climb ladders/ropes/scaffolds or balance; and should avoid workplace hazards (e.g., unprotected heights, moving machinery). The claimant can understand, remember and carry out two to three step directions; and can maintain concentration and persistence necessary to perform two to three step tasks.

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

6. The claimant was born on April 19, 1960 and was 47 years old, which is defined as a younger individual age 18-49, on the date the application was protectively filed. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 416.963).

7. The claimant has at least a high school (GED) education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a "disability" as defined in the Social Security Act since November 8, 2007, the date the application was filed (20 CFR 416.920(g)).

11. The claimant's alcoholism is clearly significant to his circumstances, but even considering his ongoing alcohol consumption, the evidence of record does not establish that the claimant is disabled for the reasons contained in the body of this decision.

(Tr. 16-17, 22-23)

On April 4, 2011, the Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 4-8), thereby rendering that decision the final decision of the Administration. This civil action was thereafter timely filed, and the court has jurisdiction. 42 U.S.C. §§ 405(g), 1383(c)(3). If the ALJ's findings are supported by substantial evidence,

based on the record as a whole, then those findings are conclusive.  Id.

## II.  Review of the Record

The following account of the facts of this case is excerpted from the ALJ's decision (Tr. 17-21):

The claimant testified at the hearing he is five feet eight inches tall and weighs 137 pounds and is right hand dominant. He completed the eighth grade and obtained a GED. He has not had a driver's license since age 16 when he was caught drag racing. He last worked in 2005 or 2006, at a stockyard and only on Mondays when they had a sale. He has very little reported earnings and, while testifying, he responded affirmatively when asked if he had worked "under the table." He stopped roofing years ago and could not remember exactly when he stopped, but guessed maybe four years and five months ago. He testified that as a roofer, he worked seven days a week and was paid eighteen dollars an hour.

The claimant further testified that: he smokes one-half pack of self-rolled cigarettes per day and does not use marijuana use; he drinks one pint of whiskey daily and has been in rehabilitation a few times; he has been in jail the past when he was looking for shelter and "they" took him in; however, he has not been in jail since filing his claim for disability benefits; while at the jail, he was taken to the emergency room for hallucinations from alcohol withdrawal; he cannot walk, his back is broken, and he has arthritis; his main problem is his balance; he is legally blind in his left eye and right eye is weak and waters all the time; he went to the hospital in 2008, for ataxia one time when he had woken up and could not get out of bed; he crawled to the Dollar Tree store nearby and was bloody when he arrived; he is in pain all the time and wants to cry; he has arthritis pain in his neck and hears a crackling sound when he turns his head and neck from side to side; he has been seen by Dr. Lyles and Dorothy Crowder, but does not have ongoing treatment so he sees them through the emergency room; he spends his day sitting on a bucket in the woods or goes to his friend's house and sits in a chair; his friend lets him sleep over and take a shower occasionally; when he sleeps, his friend tells him that he hollers all night; he is tired all day and lies down or stretches out during the day; he uses a cane to assist with ambulation and can walk fifteen feet; he started drinking at age twelve and has not stopped; and that he drinks to relieve his pain.

In previously reported case documents, the claimant stated that: he has short term memory loss, depression, difficulty walking and standing, constant pain, left-sided weakness, left eye blindness, and swollen hands; he had a stroke on October 18, 2007, with left-sided weakness and alcoholic ataxia; he saw Dr. Lyles on October 18, 2007 and November 8, 2007, and told him that

he did not want any medications; he is homeless and lives in his friend's car; he needs help getting his food and taking a bath; he has an extremely bad problem with balance and frequently falls; he experiences muscle cramps which cause sleep disruption; he has difficulty with lifting, squatting, bending, standing, reaching, walking, kneeling, climbing stairs, seeing, memory, completing tasks, and concentration; and that he takes no medications. Exhibits lE, 3E, 5E, 6E, and l2E.

The evidence shows the claimant complained to emergency room personnel, on November 8, 2007, of left-sided weakness and difficulty walking beginning approximately three weeks prior thereto. Examination showed slight weakness on his left side. A CT scan of the brain revealed mild generalized cerebral and cerebellar atrophy, more extensive than expected in his age group. There is, however, no intracerebral hemorrhage, mass effect, or edema. Diagnostic impression was acute intoxication and alcoholic ataxia. He was discharged home with instructions to follow-up with his primary care physician in three to four days. Exhibits lF and 2F.

He was admitted to the hospital for observation on December 11, 2007, for acute alcohol intoxication and alcoholic ataxia. He was given Thiamin, Folic Acid, Ativan, and a multivitamin. He was discharged home on December 12,2007, in stable condition and was to followup with his primary care physician in two weeks. Exhibits 2F and 13F.

He was brought to the emergency room by emergency medical personnel on December 21, 2007. His friend stated he had an alcohol induced seizure. The claimant's friend reported that the claimant had one pint of alcohol that morning and had been intoxicated for one month. He does not want any medications, he just wants to be seen and know what is wrong with him. He usually consumes one quart of whiskey daily. IV hydration was given and he was discharged due to non-emergency. He returned to the emergency room the next day complaining of not being able to move; however, he was observed to move from the car into the wheelchair. He states he cannot walk or move the left side of his body as he is moving the left side of his body. He denied drinking today but smelled of alcohol. He denies pain and states he does not want any medications. He was referred to his primary care physician. He reported being homeless and medical personnel called Pineview Boarding Home for placement. He was accepted and was picked up from the emergency room. Exhibit 13F.

He was seen in follow-up on January 7, 2008, at United Neighborhood Health Services, for the claimant's reports of a cerebrovascular accident, alcoholism, and a rash on his legs and armpits. He had an unbalanced gait and both hands were shaking. Blood pressure was 120/70. He was prescribed Anamtadine and Hydrocortisone cream. Exhibit l2F.

He presented to the emergency room on June 16,2008, with complaints of left arm and leg weakness beginning in November 2007, and trouble with balance. He thinks he had a stroke and has had no treatment. Today, his balance is worse and he has to hold onto something to walk. He hurts all over from life as roofer and has arthritis in his back. He drinks to control his pain. He has had two quarts of beer today and states it is his usual intake. Examination showed mild

5

weakness in his upper and lower left extremities. He was alert and oriented times three with normal affect and slurred speech. A CT scan of his head was within normal limits. He was able to ambulate independently and can perform all activities of daily living without assistance. He improved and was discharged home. Impression was an old CV A and alcohol abuse. Exhibit llF.

On February 12,2009, he went to the emergency room with coughing and chest tightness for two weeks. Chest x-rays were within normal limits. He was prescribed Rocephin and Toradol. Exhibit 13F.

He arrived to the emergency room by emergency medical personnel on April 29, 2009, and Trousdale County Sheriff's Department personnel were present. He was in a fight and has several knots on his head, a two-inch laceration to the right side of his neck, and laceration to right thumb. He was noted to smell of alcohol. He received a Tetanus shot and was discharged. Impression was multiple superficial lacerations. Exhibit 13F.

On January 23, 2008, Albert J. Gomez, MD, performed a consultative physical examination of the claimant. The claimant reported a history of blindness in his left eye due to a motor vehicle accident twelve years ago. He also reported having a stroke in November 2007, and was initially paralyzed on his left side. He had significant improvement after three days but still has weakness on his left side. He is 47 years old and lives in a boarding house for senior citizens. He finished the seventh grade and later obtained his GED. He smokes three-fourths of a pack of cigarettes per day. He drank approximately one-fifth of whiskey a day between 1987 and December 2007. He discontinued this habit in December 2007. He takes no medications. He is alert and oriented times three and appears to be in no acute distress. He walks with a wide-based gait without any walking devices. His gait is moderately unsteady. He gets on and off the examination table with moderate difficulty. He is blind in his left eye and vision in his right eye was 20/40. His neck has full range of motion except for right and left rotation of 70 degrees. Motor strength is 5/5 in upper extremities and 4/5 in lower extremities. Straight leg raise is negative in the lying and sitting position. Lumbar spine has moderate tenderness to palpation and full range of motion. He has full range of motion in shoulders, elbows, wrists, hips, knees, and ankles. Babinski sign was absent and Romberg test was negative. He could not do the tandem walk, heel walk, or toe walk and had difficulty squatting and standing on one leg. Impression was left eye blindness; CV A according to claimant; alcohol abuse; and ataxia secondary to alcohol abuse. Dr. Gomez assessed the claimant could occasionally lift 20 pounds and stand or sit at least 6 hours out of 8 hours. However, due to his ataxia and blindness in his left eye, it would be difficult for him to compete in today's job market. Exhibit 3F.

On February 11,2008, Sherry Crump, MD, reviewed the evidence and opined that the claimant could lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk at least 2 hours out of 8 hours and may use a hand-held device as needed for safety and balance when ambulating over uneven terrain; sit 6 hours out of 8 hours; frequently kneel and crawl; occasionally climb ramp/stairs, stoop, and crouch; never climb ladder/rope/scaffolds or balance;

and avoid hazards. Exhibit 5F.

On March 1, 2008, Thomas S. Rowe, MD, reviewed the evidence and opined that the claimant had a visual impairment only in the form of left eye blindness. He assessed the claimant should avoid working at heights or on ladders. Exhibit 8F.

On September 6, 2008, Marvin H. Cohn, MD, reviewed the evidence and opined that the claimant could lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk at least 2 hours out of 8 hours and a medically required hand-held assistive device is necessary for ambulation; sit 6 hours out of 8 hours; frequently stoop; occasionally climb ramp/stairs, kneel, crouch, and crawl; never climb ladder/rope/scaffolds or balance; and avoid hazards. Exhibit 10F.

* * *

The claimant additionally alleges disability due to depression. The evidence of record shows no history of mental health treatment, outpatient therapy, or psychiatric hospitalizations and there is no evidence to suggest that the claimant was ever prescribed psychotropic medications. However, viewing the case in a light most favorable to the claimant, there is opinion evidence suggesting a moderate limitation in the claimant's ability to understand, remember and concentrate associated with diagnostic impressions of depressive disorder and alcohol dependence.

Specifically, on February 6, 2008, Linda Blazina, Ph.D., conducted a psychological evaluation of the claimant. Dr. Blazina reported that the claimant was driven to the evaluation by a staff member at the boarding house where he lives. His gait was somewhat unsteady and he reported balance problems. He was alert and oriented times four, eye contact was appropriate, mood was dysthymic, affect was mood congruent, speech was slow in rate, thought processes were logical. He denied suicidal or homicidal ideation or intent. He reported being depressed for a long time associated with feelings of worthlessness, crying spells, sleep disturbance, and anxiousness. His intellectual functioning was estimated to be in the low average range. He reported a history of alcohol dependence and stopped drinking in November 2007. He consumed an average of one fifth of whiskey daily. He was treated for substance abuse in 2005. He reported no use of illicit drugs and no history of mental health treatment. He was incarcerated from 1996 until 1999 for aggravated assault and has been jailed on numerous occasions for assault and DUI charges. He stopped working in August 2006, due to health issues. He is blind in his left eye, has arthritis, and his physician told him he has had a couple of light strokes. He dresses and bathes himself independently. He has not had a driver's license since 16 years of age. He can manage money adequately and is able to shop without assistance. At the boarding house, he makes his bed regularly. He knows how to cook and could prepare meals for himself; however, his meals are provided. He enjoys reading westerns and exercises regularly with sit-ups and push-ups. Dr. Blazina formed a diagnostic impression including: depressive disorder NOS and alcohol dependence in early sustained remission; a global assessment of functioning (GAF) score of 85 Dr. Blazina's assessed GAF score suggests absent or minimal symptoms and good functioning in

all areas. Dr. Blazina assessed his ability to understand and remember, sustain concentration and persistence, socially interact, and adapt did not appear to be impaired. Exhibit 4F. The opinion of Dr. Blazina in its diagnosis of depressive disorder and alcohol dependence is given significant weight in this decision in that it is well supported by the weight of the medical evidence and is not inconstant with other evidence.

On February 26, 2008, Frank D. Kupstas, Ph.D., reviewed the evidence and completed a psychiatric review technique form (PRTF) and mental residual functional capacity assessment. He made an assessment based on diagnosed impairments including depressive disorder and alcohol dependence. Dr. Kupstas concluded that the claimant had a mild restriction in activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and has had no repeated episodes of extended decompensation in a work or work -like setting. More specifically, he assessed the claimant could sustain concentration, persistence, and pace over extended periods for simple tasks and detailed tasks with some difficulty at times. Exhibits 6F and 7F.

On September 5, 2008, George T. Davis, Ph.D., reviewed the evidence, and concurred with the opinion of Dr. Kupstas. Exhibit 9F. Dr. Davis reported that there has been no treatment for any mental impairment subsequent to the prior assessment by Dr. Kupstas. . . .

### III. Conclusions of Law

#### A. Standard of Review

This court reviews the final decision of the SSA to determine whether that agency's findings of fact are supported by substantial evidence in the record and whether the correct legal standards were applied. Elam ex rel. Golay v. Comm'r of Soc. Sec., 348 F.3d 124, 125 (6th Cir. 2003). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007)(quoting Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994)). Even if the evidence could also support a different conclusion, the SSA's decision must stand if substantial evidence supports the conclusion reached. Her v. Comm'r of

Soc.Sec., 203 F.3d 388, 389 (6th Cir. 1999).

## B. Proceedings at the Administrative Level

The claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3). In proceedings before the SSA, the claimant's case is considered under a five-step sequential evaluation process, described by the Sixth Circuit Court of Appeals as follows:

> 1) A claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.
>
> 2) A claimant who does not have a severe impairment will not be found to be disabled.
>
> 3) A finding of disability will be made without consideration of vocational factors, if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the Regulations. Claimants with lesser impairments proceed to step four.
>
> 4) A claimant who can perform work that he has done in the past will not be found to be disabled.
>
> 5) If a claimant cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 539 (6th Cir. 2007)(citing, e.g., Combs v. Comm'r of Soc. Sec., 459 F.3d 640, 642-43 (6th Cir. 2006)(en banc)); 20 C.F.R. §§ 404.1520(b)-(f),

9

416.920 (b)-(f).

The SSA's burden at the fifth step of the evaluation process can be carried by relying on the medical-vocational guidelines, otherwise known as "the grids," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. See Wright v. Massanari, 321 F.3d 611, 615-16 (6th Cir. 2003). Otherwise, the grids cannot be used to direct a conclusion, but only as a guide to the disability determination. Id.; see also Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990). In such cases where the grids do not direct a conclusion as to the claimant's disability, the SSA must rebut the claimant's *prima facie* case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert ("VE") testimony. See Wright, 321 F.3d at 616 (quoting Soc. Sec. Rul. 83-12, 1983 WL 31253, *4 (S.S.A.)); see also Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity ("RFC") for purposes of the analysis required at steps four and five above, the SSA is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. See 42 U.S.C. §§ 423(d)(2)(B), (5)(B); Foster v. Bowen, 853 F.2d 483, 490 (6th Cir. 1988).

### C. Plaintiff's Statement of Errors

Plaintiff first contends that the ALJ erred in finding that plaintiff's RFC reflects an ability to perform a limited range of light work, when in fact the abilities described therein will only allow for the performance of sedentary work. Plaintiff argues that

if he were limited to sedentary work, then application of the Medical-Vocational rules corresponding with his other vocational factors would direct a finding of disability as of his 50th birthday.  See 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 1, Rule 201.14.  However, the undersigned is not persuaded that the ALJ erroneously found plaintiff's RFC to allow for light work, albeit only a very limited range of work at that exertional level.

Pursuant to the regulations, 20 C.F.R. § 416.967(b),

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

As for sedentary work, it is defined in the regulations, 20 C.F.R. § 416.967(a), as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally  lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

The ALJ found that plaintiff could not perform the full range of light work, but could "lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for at least 2 hours in an 8 hour workday with normal breaks, but may require a cane for prolonged ambulation or ambulation on uneven surfaces; sit up to 6 hours out of an 8 hour workday with normal breaks; occasionally climb ramps/stairs, stoop, kneel, crouch, and crawl; never climb ladders/ropes/scaffolds or balance; and should avoid workplace

hazards...." (Tr. 17) For purposes of his first argument, plaintiff does not take issue with the ALJ's finding of these capabilities (other than alleging that there is an internal inconsistency between being found capable of frequently lifting/carrying any weight but incapable of frequently standing/walking), but argues that such capabilities in fact reflect a sedentary rather than light RFC. Accordingly, plaintiff argues that as of his 50th birthday, sedentary grid rule 201.14 should have been applied, resulting in a directed finding of disability since that day. As support for this argument, plaintiff cites agency policy stating that "frequent" (defined as between 1/3 and 2/3 of the workday) lifting/carrying requires frequent standing/walking. See SSR 83-10, 1983 WL 31251, at *-5-6. He further cites the vocational expert's inclusion of a sedentary job among the "other work" identified in response to the ALJ's hypothetical incorporating the RFC finding, as well as other agency vocational sources identifying sedentary jobs as work that plaintiff could be expected to perform.

However, standing/walking for "*at least* 2 hours in an 8 hour workday," as the ALJ found plaintiff capable of doing, is not necessarily inconsistent with standing/walking for 1/3 of an 8-hour day (the lower figure in the range of time describing "frequent" activity), as 1/3 of an eight hour day is 2.67 hours. Dykes ex rel. Brymer v. Barnhart, 112 Fed. Appx. 463, 469 (6th Cir. Oct. 12, 2004). Notably, the Sixth Circuit has affirmed a finding of residual functional capacity for "simple, unskilled, low stress light work with no more than two hours per day of standing and walking[.]" Smith v. Comm'r of Soc. Sec., 482 F.3d 873, 877 (6th Cir. 2007).

Furthermore, courts have held that in situations such as these, the RFC finding made by the ALJ and propounded hypothetically to a vocational expert retains the

categorization applied within the finding, regardless of whether the expert testifies to the existence of jobs which could also be performed by exertionally less capable people:

> [P]laintiff points to the VE's testimony that the identified desk and counter clerk jobs also could be performed by an individual who was limited to sedentary work with a sit-stand option. From this testimony, plaintiff reasons that this means that she can perform only sedentary work. Plaintiff's reasoning is unsound. The VE was not opining as to plaintiff's limitations, she was stating the unremarkable proposition that the jobs she had identified were so limited in their exertional requirements that they could be performed by workers limited to less than light work. A person who has a residual capacity for light work generally also can perform sedentary work. *It is a non sequitur to argue that because plaintiff suffered conditions that limited her job base essentially to sedentary jobs, the ALJ erred in concluding that plaintiff was able to perform a limited range of light work.*

Johnson v. Barnhart, 2005 WL 3271953, at *14 (W.D. Wis. Nov. 29, 2005) (emphasis supplied). The Sixth Circuit has expressly adopted the reasoning of Johnson and applied it in affirming the denial of benefits to a claimant found capable of a limited range of light work, who had difficulties standing for long periods of time. Anderson v. Comm'r of Soc. Sec., 406 Fed. Appx. 32, *36-37 (6th Cir. Dec. 22, 2010). These authorities support the proposition contrary to that argued by plaintiff when he states that "a sedentary RFC cannot become a light RFC by adding the ability to frequently lift/carry 10 pounds and occasionally lift/carry 20 pounds. . .[;]" the RFC found in this case never was sedentary. Rather, the limited light RFC found in this case cannot become a sedentary RFC by virtue of the stand/walk limitation it includes, and the fact that is otherwise allows for frequent sitting. The undersigned finds no merit in plaintiff's first argument.

Plaintiff next argues that the ALJ erroneously failed to include any visual limitations in his RFC determination, despite finding that plaintiff's left eye blindness was a

13

severe impairment.  However, as defendant points out, the ALJ clearly did account for these limitations, as follows:  "Dr. Rowe's opinion regarding the claimant['s] visual limitations is consistent with the evidence and is also given significant weight.  Dr. Rowe's opinion suggesting that the claimant should avoid workplace hazards has been incorporated into the claimant's residual functional capacity."  (Tr. 20)  Dr. Rowe opined that plaintiff should avoid work at heights or on ladders, in light of the credible accounts of blindness in one eye and 20/40 vision in the other.  (Tr. 282-84)  These and other environmental restrictions were included in the ALJ's finding of plaintiff's RFC.  There is no error here.

For his third argument, plaintiff claims that his medically established hypertension, cardiac arrhythmia, and ST changes were erroneously found to be nonsevere impairments, an error that was not harmless given the ALJ's failure to subsequently consider their effects in determining plaintiff's RFC.  While plaintiff faults the ALJ for holding against him his failure to seek continued medical treatment for hypertension, due to plaintiff's inability to afford the cost of such treatment, the fact remains that both the hypertension (or readings consistent with it) and the arrhythmia/ST changes were merely noted in the record (as cited by plaintiff at Tr. 185, 191, 195, 209, 216, 223-24, 230, 232-33, 344, 348, 351, 365 (Docket Entry No. 13 at 13)), with no corresponding documentation of any enduring, work-related limitations.  The ALJ did not err in finding these impairments nonsevere.

Finally, plaintiff argues that the ALJ failed in his duty to develop the record and articulate his findings with regard to plaintiff's chronic pain, symptoms of alcoholism, need for a cane, manipulative limitations, and his ability to sustain work activity in light of moderate mental limitations.  Plaintiff chiefly relies upon his argument that the inability to

14

afford medical treatment was held against him. However, the record reveals that plaintiff received medical treatment in the emergency room and from Dorothy Crowder, but that he declined or discontinued the treatment that was available to him. (Tr. 18, 50-51) Moreover, the assessments of the consultative examiner, Dr. Gomez, and the file review consultants, Drs. Crump, Rowe, Cohn, Blazina, Kupstas, and Davis, provide a sufficient record of plaintiff's physical and mental impairments from which to reach a decision on his claim to benefits. As regards his long history of alcoholism, defendant rightly points out that plaintiff's work-related functioning did not appear to suffer from his alcohol abuse, as evidenced by the fact that he reportedly drank a fifth of whiskey a day the whole time he successfully worked as a roofer; nor did his physical or psychological examination results obtained by Drs. Gomez and Blazina, respectively, appear to reflect any particular abnormalities associated with alcohol abuse, other than his gait disturbance as a result of alcoholic ataxia, which the ALJ accounted for in his RFC finding with exertional, postural, and environmental limitations. Moreover, plaintiff's use of a cane was accounted for by the vocational expert, and his upper extremity function and strength, as well as his manual dexterity and grip strength, was normal when he was examined by Dr. Gomez. (Tr. 245) While Dr. Gomez opined that "it would be difficult for this patient to compete in today's job market," id., the ALJ rightly indicated that this opinion was a conclusion on the subject of vocational limitation, drawn upon examination results that did not preclude light work activity, and that the vocational expert's testimony appropriately outweighed it. (Tr. 20) Plaintiff concludes by arguing that although the ALJ reviewed Dr. Kupstas' assessment of moderate limitations of mental functioning (Tr. 21), he never mentioned any such limitations. However, "the opinions of Dr. Kupstas and Dr. Davis [were] given significant

15

weight insofar as they opine moderate limitations in the claimant's ability to maintain concentration, persistence or pace." (Tr. 21) These limitations, as well as plaintiff's inability to understand, remember, and carry out more than two- to three-step directions, were included in the ALJ's finding of plaintiff's RFC. (Tr. 17)

In sum, the undersigned finds the record in this case sufficiently developed by the ALJ, according to his duty to ensure the same, and finds substantial evidence on the record as a whole in support of the ALJ's decision. Accordingly, it is the recommendation of the undersigned that the administrative decision be affirmed.

## IV. Recommendation

In light of the foregoing, the Magistrate Judge recommends that plaintiff's motion for judgment on the administrative record be DENIED, and that the decision of the SSA be AFFIRMED.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. Thomas v. Arn, 474 U.S. 140 (1985); Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004)(en banc).

**ENTERED** this 4th day of March, 2013.

                                         s/ John S. Bryant
                                         JOHN S. BRYANT
                                         UNITED STATES MAGISTRATE JUDGE